**Jerrod Duanya FERGUSON aka Jerry Fuller, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 14-09-00575-CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 1, 2011.

Rehearing En Banc Overruled March 3, 2011.

Jerrod Duanya Ferguson, Huntsville, pro se.

Melinda Fletcher, Amarillo, for Appellee.

Panel consists of Justices ANDERSON, FROST, and BROWN.

## OPINION

JOHN S. ANDERSON, Justice.

A jury found appellant guilty of possession of a prohibited item in a correctional facility, namely, a cell phone. The jury assessed six years' imprisonment by the Texas Department of Criminal Justice ("TDCJ") for the offense. Appellant, appearing *pro se* at both the trial and on appeal, raises nine points of error on appeal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Major Calvin Tucker of the Darrington Unit of the TDCJ testified that on March 14, 2007, he attempted to conduct a routine search of appellant's cell and person. (3 RR 11) Appellant's cell mate was sleeping, but appellant was awake and at the rear of the cell. (3 RR 11) Major Tucker asked appellant to consent to a strip search; appellant refused. (3 RR 11) Major Tucker then asked another TDCJ employee to open the door to appellant's cell, which she did. (3 RR 14) At this point, appellant's cell mate woke up and consented to a strip search, which Major Tucker conducted. (3 RR 14) Appellant then appeared to consent to the search by taking off his shirt and handing it to Major Tucker, who was standing in the cell doorway. (3 RR 15) Major Tucker searched the shirt and attempted to return it to appellant. (3 RR 15) At that point, appellant tried to shut the cell door on Major Tucker. (3 RR 15) Major Tucker pushed back and stepped into the cell; appellant responded by punching Major Tucker in the face. (3 RR 15–16) Major Tucker struck appellant in response. Eventually appellant lay down on the bed, where Major Tucker hand-cuffed him and walked him to the cell door. (3 RR 16)

Major Tucker then handed off appellant to two other officers who took appellant to the infirmary. (3 RR 17) One of the TDCJ officials who escorted appellant to the infirmary was Lieutenant Steven Kelly. (3 RR 30) Lieutenant Kelly testified he took appellant to the infirmary to check for any injuries, pursuant to policy after a "force incident" occurs. (3 RR 32) The entire medical examination and subsequent search was videotaped. (3 RR 32) The TDCJ requires the video camera remain trained on the inmate the entire time. (3 RR 32) After the medical examination, Lieutenant Kelly also took still photos of appellant to document any injuries. (3 RR 33)

Lieutenant Kelly next strip searched appellant. (3 RR 33–34) To do so, he first searched a "dry cell" next to the infirmary and then placed appellant in it. (3 RR 33–34) A dry cell is an empty room with a cell door. It does not have any plumbing or furniture. (3 RR 34) Lieutenant Kelly noted the actions he took for the video camera, stating that he searched the cell, but there is no video of the cell because the camera was required to remain on appellant. Appellant then consented to a strip search. (3 RR 35) Lieutenant Kelly testified that when appellant removed his shorts and underwear, he saw an object "go to the floor." (3 RR 35) At the same time, appellant placed an item in his mouth and swallowed it. (3 RR 35) The item was never identified, but appellant first stated the item was Prozac and later declared the item was Tylenol. (3 RR 35) The video camera did not record the object on the floor because it fell outside its range. Lieutenant Kelly testified he examined the object and found it was a gray sock, knotted on the end. (3 RR 38–39) Inside, he found a cell phone encased in a toilet paper

tube. (3 RR 38) Lieutenant Kelly testified he turned over the phone, sock and toilet paper tube to Officer Chris Cegielski, an investigator at TDCJ. Officer Cegielski testified that he examined the items and found no fingerprints on the phone. (3 RR 68) When he tried to turn the phone on, the SIM card was missing, so he could not tell if any calls were made. (3 RR 67)

Appellant cross-examined the prosecution witnesses, attempting to show a culture of corruption within the prison. He also presented two inmate witnesses who, it appears, were called to suggest that the cell phone was planted by corrupt prison officials. The trial court prevented much of their testimony upon objections by the prosecution. Appellant did not testify in his own defense.

The jury deliberated, but twice told the trial judge it was unable to reach a verdict. After the second time, the trial judge gave the jury an *Allen* charge [1] and asked them to continue deliberating. The jury returned with a verdict of guilty.

During the punishment phase, the prosecution called additional witnesses. These witnesses testified that the cell phone was not the first piece of contraband appellant had possessed in prison. He had previously possessed $100 in cash, ten marijuana cigarettes, and another cell phone. (4 RR 13, 18, 24) Appellant cross-examined them, but only asked each witness if, after the items were confiscated, whether he caused the witness personally "any other problems." Each witness answered no. The trial judge asked both parties if they had read and agreed to the punishment phase jury charge, and each answered yes. The punishment range for the offense was an enhanced sentence of between two and twenty years for the offense and up to a $10,000 fine. The jury deliberated and

sentenced appellant to six years' imprisonment and no fine.

Appellant chose to appear *pro se* at trial, but had appointed standby counsel. (2 RR 7) The prosecuting attorney was Special Prosecutor Terri Holder. (1 RR) Appellant also filed his appellate brief *pro se,* asserting nine points of error. (Ant B. 3)

## DISCUSSION

### I. Was Special Prosecutor Terri Holder Illegally Prosecuting Appellant?

In his first issue, appellant argues Special Prosecutor Terri Holder did not have authority to prosecute him. Appellant filed a Writ of Quo Warranto in the trial court to challenge the legal authority of Ms. Holder with the trial court. (Ant B. 1) He argues his conviction is illegal because Ms. Holder did not have prosecutorial authority. (AB 2)

#### A. Standard of Review

■ This issue concerns a matter of law, which we review *de novo. See Lawson v. State,* 283 S.W.3d 438, 440 (Tex. App.-Fort Worth 2009, pet. ref'd) (constitutional questions are reviewed *de novo* ).

#### B. Analysis

■ Appellant argues that the Texas Constitution allows only elected district or county attorneys to represent the State in criminal prosecutions. He further argues this is a non-delegable duty, except to appoint an attorney *pro tem* in the case of conflicts. (AB 1) The record does not contain any evidence Ms. Holder is an attorney *pro tem* and appellant does not dispute Ms. Holder's claim that she is a member of the Special Prosecution Unit for prison offenses. (1 RR)

---

1. *Allen v. U.S.,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) (a jury instruction designed to encourage the jury to reach a verdict after a period of deadlock).

The Texas Constitution states elected officials are permitted to prosecute criminal offenses. *See* Tex. Const. art. V, § 21. Nonetheless, elected district and county officials are permitted to employ other attorneys to prosecute cases. Tex. Gov't Code § 41.002 (West 2010). The courts have also determined that "[a] 'special prosecutor' is permitted by the elected district attorney to participate in a particular case to the extent allowed by the prosecuting attorney, without being required to take the constitutional oath of office." *State v. Rosenbaum*, 852 S.W.2d 525, 529 (Tex.Crim.App.1993) (Clinton, J., concurring) (emphasis omitted). Furthermore, the Texas legislature has codified the payment of Special Prosecutors to prosecute crimes on property owned by the TDCJ. Code Crim. Proc. Ann. art. 104.003 (West 2010). Finally, the Court of Criminal Appeals has specifically stated the Special Prosecution Unit has the authority necessary to prosecute inmate offenses. *Ex parte Jones*, 97 S.W.3d 586, 589 (Tex.Crim. App.2003). As a result, we conclude Ms. Holder had the authority necessary to prosecute appellant. Appellant's first point of error is overruled.

## II. Were There Fatal Errors in the Indictment?

In his second point of error, appellant argues his due process rights were violated because the prosecutor did not file a complaint prior to the grand jury indicting him. In appellant's third point of error, he argues the indictment was flawed because he was indicted under the name of "Jerry Fuller" but his correct name is "Jerrod Duanya Ferguson." (AB 6, CR 3) Appellant argues in his fourth point of error that the indictment had fatal flaws because it did not include all necessary elements of an indictment. In his fifth point of error, appellant argues the indictment is invalid because the district court's number is not listed on its face.

## A. Standard of Review

■ We review a trial court's denial of a motion to quash an indictment under a bifurcated approach. *See State v. Moff*, 154 S.W.3d 599, 601 (Tex.Crim.App.2004). To the extent the credibility and demeanor of witnesses are at issue, we review the trial court's decision for abuse of discretion. *Id.* For all other matters related to the form of the indictment, we review *de novo* as a matter of law. *Id.*

## B. Analysis

### 1. Necessity of a Complaint Prior to a Grand Jury Indictment

■ In his second point of error, appellant argues the grand jury indictment against him is fatally flawed because the prosecution failed to file a complaint prior to receiving a grand jury indictment. Appellant submitted a "Motion to Dismiss for Violations of the Fifth and Fourteenth Amendments of the United States Constitution and Article 1 § 19 of the Texas Constitution" to the trial court, requesting it quash the indictment. (CR 26) The trial court denied appellant's motion. (CR 28) Appellant cites authorities stating that a complaint must be filed in order for the prosecutor to proceed to trial on the basis of an information. *See* Code Crim. Proc. Ann. art. 21.22; *Baldauf v. State*, 456 S.W.2d 136 (Tex.Crim.App.1970). He also cites authority stating a complaint sometimes must be filed prior to a magistrate issuing a warrant. *See* Code Crim. Proc. Ann. art. 15.04; *Weems v. State*, 167 S.W.3d 350 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd).

A grand jury indictment is different from either an information or a warrant. *See* Code Crim. Proc. Ann. art. 21. An indictment is returned by a grand jury after consideration of a charge provided by the prosecutor. *See id.* art. 21.01–02. The grand jury is obligated to consider whether the charge is substantially pleaded be-

fore the prosecutor can charge anyone with the crime. *Id.* art. 21.04. An information is a document filed by the prosecutor with the court to charge a person with a crime. *Id.* art. 21.20. An information does not require any court or grand jury review before bringing the defendant to trial, so the prosecutor must provide some credible reason to bring the charges. *Id.* art. 21.22. Hence, a sworn complaint must be provided to justify an information. *Id.*

There is no statutory requirement for a prosecutor to file a complaint before a grand jury issues an indictment. *See id.* art. 21. Appellant has cited no other legal authority showing a grand jury must receive a complaint prior to indicting a defendant. (AB 5) As a result, we conclude appellant's argument is without merit and his second issue is overruled. *See* Tex. R.App. P. 38.1(i).

## 2. Alleged Incorrect Name on the Indictment

■ In his third point of error, appellant argues that the indictment was fatally flawed because the original was in the name of "Jerry Fuller" but his name is "Jerrod Duanya Ferguson." (AB 6) Appellant argues that he gave timely notice of the alleged error in naming to the trial court. The trial court ordered an amendment to the indictment. (CR 3) The record does not reflect why the trial court issued this order, but we presume it was in response to a timely request by appellant. *See* Code Crim. Proc. Ann. art. 26.08 (allowing change of style if defendant informs court of his true name).

Most filings in this case have been styled "Jerrod Duanya Ferguson aka Jerry Fuller." At no time did appellant object to the styling. Furthermore, appellant acknowledged he uses both names.

In voir dire, he told the venire panel, "My name is Jerrod Duanya Ferguson. I was convicted and sentenced [for his previous crime] under the alias Jerry Fuller." (2 RR 68) Witnesses referred to appellant as "Jerry Fuller" without any comment or objection from appellant. Thus, this court concludes appellant is known by more than one name. Under the Texas Code of Criminal Procedure, if "a person is known by two or more names, it shall be sufficient to state either name" in the indictment. § 21.07. Appellant acknowledged and acquiesced to the use of the name "Jerry Fuller." Further, the trial court issued the order amending the indictment. Consequently, the indictment is valid and appellant's third point of error is overruled.

## 3. Were Essential Elements Missing from the Indictment?

■ In his fourth point of error, appellant argues the indictment is invalid on its face because the name of a complaining witness was not included in the indictment. In support of this claim, he cites *Abu–Shabaam v. State*, 848 S.W.2d 782 (Tex. App.-Houston [14th Dist.]), *vacated* 856 S.W.2d 436 (Tex.Crim.App.1993). In *Abu–Shabaam*, this court found an indictment invalid when the complaining witness listed in the indictment was named as "N. Tomlinson" but only a "William Tomlinson" testified. *Id.* at 785. This created a fatal variance between the allegations in the indictment and the proof presented at trial, requiring overturning the verdict. *Id.* An error in the name of a complaining witness is not the same as the omission of a complaining witness in the indictment.

An indictment is statutorily sufficient if it has nine elements, none of which require inclusion of the name of a complaining witness. Code Crim. Proc. Ann. art. 21.02.[2] Thus, the indictment is valid with-

---

2. The elements necessary are:

1. Commencing "in the name and by authority of The State of Texas."

out a complaining witness listed. *See id.* Appellant's fourth point of error is overruled.

### 4. Was the Failure of the Indictment to List the Number of the Trial Court Error?

■ Appellant argues in his fifth point of error that the trial court did not have jurisdiction over him because the indictment failed to name the 23rd District Court of Brazoria County as the trial court. (CR 8) Appellant argues this information was necessary under the authority of *Greenfield Energy, Inc. v. Duprey,* 252 S.W.3d 721 (Tex.App.-Houston [14th Dist.] 2008, no pet.). This authority has no bearing on appellant's claim, however, because *Greenfield* was a civil action where no indictments were filed. *Id.* at 724. Furthermore, the issue in *Greenfield* was the trial court's personal jurisdiction over corporate entities under minimum contacts analysis, not an indictment form question. *Id.* at 724.

Appellant does not generally attack the jurisdiction of the 23rd District Court of Brazoria County, but only claims the trial court lacks jurisdiction because the indictment did not specifically name the 23rd District Court. Appellant's claim is invalid, however, because the Court of Criminal Appeals has decided that "when there is more than one district court in the county, the indictment need not specify the particular court in which it was presented." *Roberts v. State,* 489 S.W.2d 113, 114–15

(Tex.Crim.App.1973). Brazoria County has more than one district court. As a result, the indictment was not flawed by failing to list a specific court on its face and the trial court had jurisdiction over the proceedings. Appellant's fifth issue is overruled.

### III. Was The Evidence Against Appellant Legally Sufficient?

Appellant argues the evidence was not legally sufficient to support the conviction in his sixth and eighth points of error. Accordingly, we will combine these arguments and respond to them jointly.

#### A. Standard of Review

In a legal sufficiency review, we view all evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *Salinas v. State,* 163 S.W.3d 734, 737 (Tex.Crim.App.2005). The jury, as the sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness' testimony. *Jones v. State,* 984 S.W.2d 254, 257 (Tex.Crim. App.1998). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses to, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim.App.1986). Reconciliation of conflicts in the evidence is within the jury's

2. The indictment must appear in the district court of the county where the grand jury was in session.

3. The indictment must be an act of the grand jury in the proper county.

4. The indictment must contain the name of the accused, or state that his name is unknown and give a reasonably accurate description of him.

5. The indictment must show the offense was committed within the jurisdiction of the trial court.

6. The date of the offense must be prior to the indictment, but not so remote as to be barred by statutes of limitations.

7. The offense must be written in plain language

8. The indictment must conclude, "Against the peace and dignity of the State."

9. The foreman of the grand jury must sign the indictment. Tex.Code of Crim. Proc. § 21.02.

discretion and such conflicts alone will not call for reversal if there is enough credible evidence to support a conviction. *Losada v. State*, 721 S.W.2d 305, 309 (Tex.Crim. App.1986). An appellate court may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute its judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). Inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App.2000). We do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App.1993); *Harris v. State*, 164 S.W.3d 775, 784 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd.).

### B. Analysis

■ A person commits a crime if he intentionally or knowingly possesses a cellular telephone while an inmate in a correctional facility operated by the TDCJ. *See* Tex. Penal Code § 38.11(j) (West 2010).

Appellant concedes he is an inmate at a TDCJ correctional facility. Appellant argues the evidence against him is legally insufficient because: (1) the jury received an *Allen* charge before reaching a verdict; (2) appellant's fingerprints were not discovered on the cellular phone; (3) there was no evidence the cell phone was registered to either appellant or his "family/friends"; (4) there was no record of any appellant's conversations with the phone; (5) the video recording shows appellant sitting down and standing without any item protruding from his shorts or falling out. Even if all of appellant's contentions are true, we conclude they do not demonstrate the evidence is legally insufficient.

The jury heard several witnesses. Major Tucker testified that appellant made efforts not to be strip searched, including striking Major Tucker. (3 RR 15–16) Lieutenant Kelly testified that he searched the dry cell prior to admitting appellant to the room and found nothing in it. (3 RR 34) Lieutenant Kelly and another officer testified that when appellant removed his clothing, a gray sock fell to the floor at the same time appellant appeared to swallow something. (3 RR 35–36) Appellant initially claimed he swallowed Prozac, but later said he swallowed Tylenol. (3 RR 36) Lieutenant Kelly searched the sock and found the cell phone inside. (3 RR 38) Investigator Cegielski testified there was no SIM Card present in the cell phone when he received it. (3 RR 67)

Viewing the evidence in a light most favorable to the verdict, we conclude a reasonable jury could have determined appellant possessed the cell phone. *Salinas v. State*, 163 S.W.3d at 737. Appellant's sixth and eighth points of error are overruled.

### IV. Were There Errors in the Jury Charge?

Appellant argues in his seventh point of error that the trial court failed to give an instruction on the law of presumptions in the jury charge. In his ninth point of error, appellant argues the trial court failed to give general admonishments in the jury charge, including the admonishment about the presumption of innocence. We address these issues together.

### A. Standard of Review

■ When reviewing claims of jury charge errors, we first determine whether there was error in the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex.Crim.App. 2009). If there was error and appellant objected to the error at trial, reversal is required if the error "is calculated to injure the rights of the defendant," which has been defined to mean there is "some harm." *Almanza v. State*, 686 S.W.2d 157,

171 (Tex.Crim.App.1985). If the error was not objected to, the error requires reversal only if the error was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Id.*

### B. Analysis

#### 1. Instructions on the Law of Presumptions

█ Appellant argues the trial court erred in not giving an instruction to the jury on the law of presumptions. (AB 11) He acknowledges he did not make any objection at trial about the law of presumptions, so we will review this point of error under the fundamental error standard. *Id.* (AB 11) Appellant was charged with knowingly or intentionally possessing a cellular phone while an inmate in TDCJ custody.

█ There is no mandatory presumption in the charge. *See Willis v. State,* 790 S.W.2d 307, 310 (Tex.Crim.App. 1990) (explaining a mandatory presumption requires the jury to presume an element or fact of the case or creates a presumption the defense must rebut). A permissive presumption allows, but does not require, the jury to infer an element of the crime from other facts. *Id.* It is generally deemed constitutional if a reasonable jury could infer the presumption from facts in evidence. *Id.*

In this case, there were no presumptions given in the jury instructions. The jury was required to find each element of the charge beyond a reasonable doubt. Thus, there is no need to give instructions on permissive presumptions because there were none the jury could make. *See* Tex. Penal Code § 2.05(a) ("[W]hen this code or another penal law establishes a presumption with respect to any fact ... the court shall charge the jury, in terms of the presumption[.]"). The trial court did not commit error; consequently, there is no need for us to analyze the possible harm to the

appellant. Appellant's seventh point of error is overruled.

#### 2. Did the Trial Judge Fail to Give Proper Instructions on the Presumption of Innocence?

Appellant argues the trial judge breached his duty to *sua sponte* inform the jury on the law regarding "the presumption of [innocence], proof beyond a reasonable doubt, unanimity of the verdict, & so forth." (AB 14) Appellant does not clarify whether he is referring to the trial court's duty in the verdict or sentencing jury charge, nor does he point to specific language in the jury charge to support his claim.

█ ▪ The trial court has a duty to inform the jury about the presumption of innocence, proof beyond a reasonable doubt, and requirements of unanimity of the verdict. Upon reviewing the jury charge for the guilt—innocence phase, we conclude the trial court did give proper instructions on all of the above issues.

█ In the punishment stage, the trial court has a duty to *sua sponte* instruct the jury about extraneous crimes or bad acts ("bad acts"). Tex.Code Crim. Proc. Ann. art. 37.07(3)(a)(1). Particularly, the trial judge must instruct the jury that it must believe the evidence of extraneous bad acts has been shown beyond a reasonable doubt to consider the bad acts in sentencing. *Id.; id.* art. 36.14; *Huizar v. State,* 12 S.W.3d 479, 484 (Tex.Crim.App.2000).

During the punishment phase, the prosecutor solicited evidence of extraneous bad acts. In particular, witnesses testified that appellant had previously possessed cash, marijuana, and another cell phone while incarcerated. (4 RR) Witnesses testified that these items were prohibited contraband. Appellant did not cross-examine the witnesses about the veracity of their

claims, nor did he argue he did not possess the items in closing arguments. After the witnesses testified, appellant confirmed he read the proposed jury charge and had no objections.

In the jury charge for the punishment stage, the trial court did not instruct the jury that they could only consider the bad acts if they found them to be true beyond a reasonable doubt.[3] Thus, we conclude the trial court erred because it did not give the reasonable doubt instruction in the punishment charge. *See* Tex.Code Crim. P. art. 37.07(3)(a)(1); Tex.Code Crim. P. art. 36.14; *Huizar*, 12 S.W.3d at 484 (Tex. Crim.App.2000).

▆▆▆▆ Because the trial court erred, we must perform the harm analysis of *Almanza*. *Almanza*, 686 S.W.2d at 171. Appellant did not object to the omission of the reasonable doubt instruction, so we will only overturn the trial court's punishment if the error resulted in egregious harm. *Id.* Egregiousness is determined by examining the entire jury charge, the state of evidence, appellant and State's arguments, and any other information revealed by the record. *Id.* To find egregious harm, appellant must make a showing of actual harm, not just theoretical harm. *See id.* at 174.

We decided a similar case in *Walton v. State.* 2007 WL 706582 (Tex.App.-Houston [14th Dist.] 2007, pet. ref'd.) (mem.op.) Although without precedential value, we find the reasoning in the decision persuasive and adopt it here. In that case, Walton was found guilty of sexual assault. *Id.*

at *1. During the punishment phase of his trial, the mother of the sexual assault victim testified Walton hit her, but she never pressed charges. *Id.* at *3. During cross-examination, Walton never disputed any part of the woman's story. *Id.* Nor did Walton object to the jury charge. *Id.* Walton received a sentence of forty years out of a range of five to ninety-nine years available to the jury. *Id.* We found there was no egregious error in that case because the woman's testimony was never disputed, Walton did not object to the jury charge at trial, and received a mid-range sentence in the possible range of sentencing. *Id.* at *4. Thus, Walton could not show actual harm caused by the jury charge error. *Id.*

Appellant's case bears many similarities with *Walton.* Bad acts were admitted in the punishment phase, but appellant never challenged the factual basis of the witness' testimony. Appellant affirmatively approved of the proposed jury charge that did not include an instruction on reasonable doubt. Finally, appellant could have received an enhanced sentence of two to twenty years in prison. The jury sentenced him to six years, only four more than the minimum required and fourteen years less than the maximum. Appellant has not proven he suffered actual harm due to the error in the jury instruction. *See Almanza*, 686 S.W.2d at 174. Thus, we conclude the trial court's error was not so egregious that the defendant "has not had a fair and impartial trial." *Id.* at 171.

---

**3.** The relevant portion of the jury charge reads:

You are further charged that in fixing the defendant's punishment, you may take into consideration all of the evidence submitted to you in the full trial of this case, that is, all the evidence submitted to you in the trial of the first part of this case wherein you were called upon to determine the guilt or innocence of the defendant, and all other evidence admitted to you in the second part of this trial wherein you are called upon to fix the defendant's punishment. And you will be bound by the charges of the court covering the first and second parts of this trial in determining what punishment shall be given to the defendant.

Appellant's ninth point of error is overruled.

### CONCLUSION

Having considered and overruled each of appellant's nine issues on appeal, we affirm the judgment of the trial court.

FROST, J., Concurring.

KEM THOMPSON FROST, Justice, concurring.

The majority unnecessarily analyzes an issue that appellant has not raised regarding the punishment-phase jury charge and, in the process, treats an unpublished opinion of this court as having precedential value. Though I concur in today's decision to affirm the trial court's judgment, I disagree with the majority's analysis and respectfully decline to join it.

In his ninth issue, appellant asserts that the trial court "failed to do a 'Sua Sponte Duty' thereby abusing its discretion." In his statement of this issue, appellant cites the part of the record containing the jury charge in the guilt/innocence phase of the trial. In his argument under this issue, appellant cites a case dealing with the jury charge during the guilt/innocence phase of the trial. *See Delgado v. State*, 235 S.W.3d 244, 249 (Tex.Crim.App.2007). Relying on this case, appellant argues that the trial court failed in its *sua sponte* duty to "ensure that all of the law applicable to the criminal offense that is set out in the indictment or information is incorporated into the jury charge as well as the general admonishments, including reference to the presumption of innocence, proof beyond a reasonable doubt, unanimity of the verdict, and so forth." *Id.* Appellant underlines for emphasis in his brief the phrase "including reference to the presumption of innocence." Notably, there is no presump-

tion of innocence during the punishment phase of trial. *See Marquez v. State*, 725 S.W.2d 217, 227 (Tex.Crim.App.1987). Appellant cites two cases regarding the jury charge during the guilt/innocence phase and no cases regarding the jury charge during the punishment phase. Appellant does not mention anything about evidence of extraneous offenses during the punishment phase or the trial court's duty to charge the jury regarding them. Appellant twice cites the jury charge for the guilt/innocence phase and does not cite the jury charge for the punishment phase. Appellant asserts that the error alleged under the ninth issue entitles him to a reversal of the entire judgment and a new trial as to his guilt. This relief corresponds to error during the guilt/innocence phase but not to error during the punishment phase. Although the majority states that it is not clear whether appellant is challenging the jury charge in the guilt/innocence phase or in the punishment phase, it is clear that appellant is challenging only the jury charge during the guilt/innocence phase.

As the majority notes, the trial court complied with its duty to ensure that all of the law applicable to the criminal offense set out in the indictment was incorporated into the guilt/innocence jury charge, including the general admonishments referring to the presumption of innocence, proof beyond a reasonable doubt, and unanimity of the verdict. During the guilt/innocence phase the trial court has no sua sponte duty to charge the jury regarding the burden of proof as to extraneous offenses. *See Delgado*, 235 S.W.3d at 246. Therefore, appellant's argument under the ninth issue lacks merit.[1]

In addressing the unassigned error, the majority finds error in the punishment-

---

1. Under the ninth issue, appellant also repeats the argument regarding inferences and the guilt/innocence jury charge that he makes under his seventh issue. This argument also lacks merit.

phase jury charge and conducts an analysis to determine whether there was egregious harm. There are many published cases upon which the majority could rely to conclude that the trial court's failure to give the reasonable-doubt instruction during the punishment phase did not result in egregious harm to appellant. *See, e.g., Sansom v. State,* 292 S.W.3d 112, 132–34 (Tex.App.-Houston [14th Dist.] 2008, pet. ref'd) (trial court's error in failing to give reasonable-doubt instruction on extraneous offenses at punishment phase did not result in egregious harm to defendant); *Zarco v. State,* 210 S.W.3d 816, 823–27 (Tex. App.-Houston [14th Dist.] 2006, no pet.) (no egregious harm due to trial court's failure to give reasonable-doubt instruction on extraneous offenses during punishment phase). Rather than rely upon published cases that have precedential value, the majority chooses to rely upon an unpublished opinion from this court. *See ante* at pp. 686-87. Neither appellant nor the State cited this case; indeed, there is no citation to any unpublished opinions in any of the briefing in this appeal.

In criminal appeals, opinions that are not designated for publication have no precedential value.[2] *See* TEX.R.APP. P. 47.7 & 2008 cmt.[3] That means unpublished

cases are not part of Texas jurisprudence and cannot be either binding or persuasive authority. *See State Farm Lloyds v. Borum,* 53 S.W.3d 877, 889 & n. 7 (Tex.App.-Dallas 2001, pet. denied) (refusing to consider unpublished opinion because such opinions have no precedential value and are not authority); *Frizzell v. Cook,* 790 S.W.2d 41, 43 (Tex.App.-San Antonio 1990, pet. denied) (equating an opinion withdrawn by the issuing court with an unpublished opinion and stating that both withdrawn and unpublished opinions have no precedential value and should not be considered by appellate courts). Unpublished opinions contain the reasons for a court's prior decision; but, the reasoning in these opinions is non-jurisprudential and is not entitled to respect and consideration as a precedent decided by an appellate court. *See Borum,* 53 S.W.3d at 889 & n. 7; *Frizzell,* 790 S.W.2d at 43.

Counsel may cite unpublished opinions,[4] but appellate courts may not treat them as binding or persuasive authority. *See* TEX. R.APP. P. 47.7 & 2008 cmt.; *Borum,* 53 S.W.3d at 889 & n. 7; *Frizzell,* 790 S.W.2d at 43; *see also* BLACK'S LAW DICTIONARY 1195 (7th ed.1999). Though the majority correctly states that the unpublished opinion has no precedential value, the majority

---

2. This raises the issue of what "no precedential value" means. The plain meaning of "precedent" is "[a] decided case that furnishes a basis for determining later cases involving similar facts or issues." BLACK'S LAW DICTIONARY 1195 (7th ed.1999). A "binding precedent" is "[a] precedent that a court must follow," and a "persuasive precedent" is "[a] precedent that a court may either follow or reject, but that is entitled to respect and careful consideration." *Id.*

3. The comment to the 2008 revisions to Rule 47 states: "Effective January 1, 2003, Rule 47 was amended to prospectively discontinue designating opinions in civil cases as either 'published' or 'unpublished.' Subdivision 47.7 is revised to clarify that, with respect to civil cases, only opinions issued prior to the

2003 amendment and affirmatively designated 'do not publish' should be considered 'unpublished' cases lacking precedential value. All opinions and memorandum opinions in civil cases issued after the 2003 amendment have precedential value. The provisions governing citation of unpublished opinions in criminal cases are substantively unchanged. Subdivisions 47.2 and 47.7 are amended to clarify that memorandum opinions are subject to those rules."

4. Since January 1, 2003, counsel have been free to cite unpublished opinions in any way they wish; but, they are required to add the notation "(not designated for publication)" in the citation. *See* TEX.R.APP. P. 47.7 & 2008 cmt.

then states that the reasoning of that opinion is persuasive and that the majority has decided to "adopt [this reasoning] here." *Ante* at p. 686. In so doing, the majority improperly treats this unpublished opinion as a persuasive authority having precedential value. *See Borum,* 53 S.W.3d at 889 & n. 7. The better course would be to cite the available published opinions on this issue or, better yet, not address the unassigned error at all.