**AFFIRMED; Opinion Filed November 5, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00918-CR

### ORINTHIOUS DEONTE BROWN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F-1241281-I**

## MEMORANDUM OPINION
Before Justices Lang, Evans, and Whitehill
Opinion by Justice Evans

Appellant Orinthious Deonte Brown appeals his conviction for the offense of aggravated assault with a deadly weapon. In his sole issue, appellant contends that the trial court erred by failing to instruct the jury that it could consider evidence of an extraneous offense only if the jury believed the testimony about the extraneous offense beyond a reasonable doubt. Appellant seeks a reversal and remand for further proceedings. We affirm.

### BACKGROUND

On July 5, 2012, Gloria Prox was sitting on an apartment balcony at the Hickory Tree Apartments overlooking the parking lot when she saw a young woman get into a white car. A black SUV entered the parking lot and parked in front of the woman's car. Prox saw a man exit the SUV and walk towards the driver's side of the car yelling and trying to get into the car. Prox

testified that the woman locked the car doors and eased her car around the SUV to exit the parking lot. The man started running after and shooting at the car. Prox further testified that she heard about five shots and that afterwards the man—whom she identified as appellant—got back in his car and followed behind the woman.

Terry Derr, a UPS driver, made a delivery to the Hickory Tree Apartments on July 5, 2012. Derr testified that he heard gunshots and saw a black man wearing white clothes shooting a gun at a white car that was driving away. Derr saw the man get into a black SUV and leave. After this incident, the police requested that he return to the crime scene because they thought his truck had been hit by the gunfire. The police recovered a bullet from the truck's headlight.

Detective Bo Davenport, a Mesquite police officer, testified that he was dispatched to the shooting site where nine shell casings were recovered. He spoke with the victim, Domionna Moffit, and she provided appellant's name, what he was wearing (all white), and a description of his vehicle (black Escalade). Detective Davenport testified that when appellant was apprehended, he was wearing all white. Detective Davenport spoke with Moffit again at the police station and she provided a sworn, written statement that was read to the jury and entered into evidence. In the statement dated July 5, 2012, Moffit wrote that appellant told her he was going to kill her and that she was afraid for her life. She also wrote that as she drove off, she looked back and saw appellant reaching into his SUV and she heard about eight pops.

Moffit did not testify at appellant's trial. Ireana Longoria, an investigator for the Dallas County District Attorney's Office, testified that her attempts to locate and subpoena Moffit were unsuccessful. Longoria retrieved the recorded calls made by appellant while in jail to Moffit and burned CDs of those calls which were played for the jury. In one of the calls, appellant asked Moffit to file an affidavit of nonprosecution. Longoria testified that in this type of affidavit the victim requests that she no longer wants to pursue charges.

–2–

The jury found appellant guilty of aggravated assault and the punishment hearing commenced. During the punishment hearing, appellant stipulated to ten of his prior convictions. The State read the jury the stipulated evidence, which included the following convictions: two former assaults (one for domestic violence), two unlawful carrying of a weapon, two driving while intoxicated, three possessions of marijuana, and recklessly discharging a firearm. Appellant then called Lilly Mae Brown, his grandmother, as his first witness. On direct examination, Ms. Brown testified that appellant lived with her and worked for her and that she believed he would abide by probation. On cross-examination, however, Ms. Brown admitted that appellant was living with her in 2012 when he committed this offense and that she cannot control his actions. Ms. Brown also conceded that appellant committed another assault while he was bonded in this case and that he did not abide by the conditions of his release on bond. Ms. Brown further conceded that appellant's bond was revoked for allegedly committing a family violence offense. Appellant did not testify in the punishment hearing.

After both sides closed, the trial court read its charge to the jury regarding punishment. The charge did not include a reasonable doubt instruction regarding extraneous bad acts or offenses. Appellant did not object to the omission of this instruction. The jury then sentenced appellant to four years' imprisonment.

## ANALYSIS

Appellant contends that the trial court erred by failing to instruct the jury that it could consider evidence of an extraneous offense only if the jury believed the testimony about the extraneous offense beyond a reasonable doubt. Appellant specifically objects to the testimony from his grandmother regarding the fact that while he was released on bond in this case, the bond was subsequently revoked when he allegedly committed a family violence offense. At trial,

–3–

appellant did not object to the jury charge, but on appeal he argues that he was egregiously harmed by error in the charge. We disagree.

When we review claims of jury charge errors, we first decide whether there was error in the charge. *Ferguson v. State*, 335 S.W.3d 676, 684 (Tex. App.—Houston [14th Dist.] 2011, no pet.). If there was error and appellant objected to the error at trial, then only "some harm" is necessary to reverse the trial court's judgment. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If, however, the appellant failed to object at trial—as in this case—then the appellant will obtain a reversal "only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Id.* Egregious harm is the type and degree of harm that affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defense theory. *Allen v. State,* 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information [revealed] by the record of the trial as a whole." *Trejo v. State,* 280 S.W.3d 258, 261 (Tex. Crim. App. 2009) (quoting *Almanza*, 686 S.W.2d at 171). Egregious harm is a difficult standard to meet and must be determined on a case-by-case basis. *See Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002).

Article 37.07 of the Texas Code of Criminal Procedure provides that evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing including, but not limited to, evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the appellant. *See* TEX. CODE CRIM. PROC. art. 37.07 §3(a)(1) (West Supp. 2014). During the punishment phase in this case, the State introduced evidence of appellant's extraneous offenses and bad acts. The trial court did not

instruct the jury regarding the burden of proof for such evidence and appellant did not request such instruction or object to its omission from the charge. Failure to give this instruction is jury charge error. *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). Thus, we will proceed to conduct a harm analysis using the *Almanza* factors to determine whether the error was egregious. *See Doughtery v. State*, PD-1411-05, 2006 WL 475802, at *1 (Tex. Crim. App. March 1, 2006) (per curiam) (not designated for publication) (reversing appellate court that did not conduct analysis using all *Almanza* factors); *Huizar*, 12 S.W.3d at 484–85 ("The error in this case derives from statutory violations of articles 36.14 and 37.07, and is purely 'charge error' under article 36.19. *Almanza* sets forth the appropriate harm analysis for charge error under article 36.19.").

The first *Almanza* factor requires consideration of the entire jury charge. *See Almanza*, 686 S.W.2d at 171. Here, the jury charge regarding punishment neither mentions the extraneous offense at issue nor instructs the jury that it could only consider such evidence if the jury believed the testimony about the extraneous offense beyond a reasonable doubt. However, the jury charge did include the following instruction:

> You are instructed that any statements of counsel made during the course of the trial or during argument, not supported by the evidence, or statements of law made by counsel not in harmony with the law, as stated to you by the Court in these instructions, are to be wholly disregarded.

The second *Almanza* factor involves the state of the evidence, including the contested issues and weight of the probative evidence. *See Almanza*, 686 S.W.2d at 171. During the guilt/innocence portion of the trial, the State presented a strong case against appellant. Prox testified that she saw appellant shooting at Moffit's car and identified appellant in court. Detective Davenport testified that he recovered nine shell casings from the crime scene. Detective Davenport also spoke with Moffit at the crime scene and she provided appellant's name, what he was wearing (all white), and a description of his vehicle (black Escalade).

Detective Davenport also spoke with Moffit again at the police station and she provided a sworn, written statement that was read to the jury and entered into evidence. In the statement, Moffit wrote that appellant told her he was going to kill her and that she was afraid for her life. She also wrote that as she drove off, she looked back and saw appellant reaching into his SUV and she heard about eight pops. During the punishment phase of the trial, appellant stipulated to ten of his prior convictions. Further, appellant's grandmother conceded during the punishment phase that appellant had committed another assault while he was bonded in this case and that he did not abide by the conditions of his release on bond. His grandmother further conceded that his bond was revoked when appellant allegedly committed another assault family violence offense. Appellant complains that the failure to instruct the jury about the extraneous offense lead to appellant not receiving probation for the offense. In light of the evidence supporting appellant's conviction at guilt/innocence and his lengthy list of his prior offenses disclosed at the punishment phase, the State's case for punishment was not significantly more persuasive because of the lack of the instruction. Further, the fact that the jury's sentence—four years—was not only within the range of punishment but it was on the lower end of the available punishment does not demonstrate egregious harm to appellant.[1] It appears likely that the jury declined probation and assessed punishment on the facts surrounding appellant's offense. *See Allen v. State*, 47 S.W.3d 47, 52 (Tex. App.—Fort Worth 2001, pet ref'd) (facts surrounding offense supported the punishment assessed by the jury). As such, the state of the evidence does not favor a finding of egregious harm.

The third *Almanza* factor involves the argument of counsel. *See Almanza*, 686 S.W.2d at 171. Appellant's counsel argued that appellant should be given probation in this case. In its closing argument regarding punishment, the State argued against probation and noted that

---

[1] The range of punishment for this offense was not less than two and not more than twenty years.

appellant's "bond was revoked because he picked up an assault family violence -- or he was arrested for an assault family violence in 2013." The State argued that appellant had not changed and should be incarcerated, not probated: "We don't have any evidence of any wrong acts from 2011. But from 2010 -- or 2000 -- from 2010 and 2012 and June 2013, when he was arrested for that assault family violence, we absolutely can show you that the defendant has not changed." The State further argued that if given probation, appellant would not abide by the necessary terms: "And if nothing is more of an indicator that the defendant is not going to follow the conditions of probation, you have to think about the fact that he was on bond for a very serious crime. And while on bond, he was arrested for a felony assault family violence offense. If being on bond for a felony doesn't deter you from picking up a new case, I don't know what will." The State mentioned the assault family violence offense on three different occasions in its closing argument during the punishment phase. The State, however, primarily relied upon his ten prior convictions and his repeated criminal behavior over the last fourteen years. The State further argued that appellant's crimes were getting more violent, appellant showed no remorse and he deserved incarceration, not an eleventh chance. After a review of the record, we cannot conclude that the argument of counsel favors a finding of egregious harm.

The final *Almanza* factor addresses any other relevant information revealed by the record of the trial as a whole. *See Almanza*, 686 S.W.2d at 171. We are not aware of "any other relevant information" that we should consider.

After a review of the *Almanza* factors, we are unable to conclude that appellant suffered egregious harm from the lack of an reasonable doubt instruction regarding the extraneous offense in punishment jury charge. The State's evidence connected appellant to the crime and the jury assessed punishment well below the maximum punishment available. It is entirely plausible that

the jury declined probation and assessed punishment based on the facts of the offense alone.

Accordingly, we overrule appellant's sole issue.

## CONCLUSION

We resolve appellant's issue against him and affirm the trial court's judgment.


/ David Evans/
DAVID EVANS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
140918F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ORINTHIOUS DEONTE BROWN,
Appellant

No. 05-14-00918-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F-1241281-I.
Opinion delivered by Justice Evans.
Justices Lang and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 5th day of November, 2015.