**Affirmed and Memorandum Majority and Concurring Opinions filed December 31, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00364-CR

---

### ERIK JIMENEZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1514680**

---

## MEMORANDUM MAJORITY OPINION

A jury found appellant, Erik Jimenez, guilty of aggravated promotion of prostitution. In two issues, appellant challenges his adjudication of guilt. First, appellant contends the evidence was insufficient to show that a prostitute specifically named in the complaint was a prostitute, or that appellant controlled, managed, or supervised a prostitution enterprise. Second, appellant contends the

trial court erred in admitting evidence of an extraneous offense or bad act. We affirm.

## I.     SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends that the State failed to prove that a prostitute named in the complaint was a prostitute, and the State failed to prove that appellant controlled, supervised, or managed a prostitution enterprise.

### A. Legal Principles

In a sufficiency review, we consider all of the evidence in the light most favorable to the jury's verdict to determine whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Balderas v. State*, 517 S.W.3d 756, 765–66 (Tex. Crim. App. 2016). We defer to the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* at 766. The jury is the sole judge of the credibility and weight to be attached to witness testimony, and we must defer to the jury's resolution of conflicting inferences that are supported by the record. *See id.* The jury is free to believe or disbelieve all or part of a witness's testimony. *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014).

A person commits the offense of aggravated promotion of prostitution "if he knowingly owns, invests in, finances, controls, supervises, or manages a prostitution enterprise that uses two or more prostitutes." Tex. Penal Code § 43.04(a). A "prostitution enterprise" is "a plan or design for a venture or undertaking in which two or more persons offer to, agree to, or engage in sexual conduct in return for a fee payable to them." *Taylor v. State*, 548 S.W.2d 723, 723

2

(Tex. Crim. App. 1977). Aggravated promotion of prostitution is a first-degree felony. Tex. Penal Code § 43.04(b).

In a felony case, absent waiver, the indictment is the charging instrument on which an accused may be tried. *See* Tex. Const. art. I, §§ 10, 12; Tex. Code Crim. Proc. art. 1.05 ("No person shall be held to answer for a felony unless on indictment of a grand jury."); *Jenkins v. State*, No. PD-0086-18, 2018 WL 6332219, at *2 (Tex. Crim. App. Dec. 5, 2018) ("The presentment of a valid indictment vests the district court with jurisdiction of the cause. . . . [C]riminal jurisdiction over a person requires the filing of a valid indictment or information." (citations omitted)).

A complaint charges the commission of an offense, but it also has at least two discrete functions. *Rios v. State*, 718 S.W.2d 730, 732 (Tex. Crim. App. 1986) (per curiam); *see also* Tex. Code Crim. Proc. art. 15.04. One is to supply a basis for a magistrate to issue a warrant for arrest. *Rios*, 718 S.W.2d at 732; *see also* Tex. Code Crim. Proc. art. 15.03. Another is to serve as a charging instrument for trial in municipal court or justice court. *Rios*, 718 S.W.2d at 732; *see also* Tex. Code Crim. Proc. art. 45.018(a). In a misdemeanor case, a complaint is a prerequisite to a valid information. *Rios*, 718 S.W.2d at 732 n.4; *see also* Tex. Code Crim. Proc. arts. 21.20–21.22. However, there is no requirement for the State to file a complaint or information before a grand jury issues an indictment. *Ferguson v. State*, 335 S.W.3d 676, 682 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also State ex rel. Holmes v. Salinas*, 784 S.W.2d 421, 424–25 (Tex. Crim. App. 1990) (return of grand jury indictment supersedes the complaint procedure and necessity of an examining trial to determine the issue of probable cause).

**B. Indictment**

Appellant alleges there is legally insufficient evidence to establish that one of the women specifically named in the complaint, but not the indictment, was a prostitute. Appellant does not raise any issue or otherwise challenge the indictment or complaint in this case. Appellant does not challenge that the State otherwise met its burden with regard to establishing that the individuals named in the indictment were prostitutes.

In the complaint, the State alleged that two specific women were prostitutes. Later, the Grand Jury of Harris County returned an indictment that also alleged two named women were prostitutes—one of the same women as named in the complaint, and another woman not originally named in the complaint.[1]

In this felony case, the indictment is the charging instrument. *See* Tex. Const. art. I, §§ 10, 12; Tex. Code Crim. Proc. art. 1.05; *Jenkins*, 2018 WL 6332219 at *6, *7; *see also Rios*, 718 S.W.2d at 732. Appellant does not challenge the sufficiency of the evidence that either of the prostitutes named in the indictment were, in fact, prostitutes. Because the State was not required to prove that the woman named in the complaint was a prostitute, any lack of such evidence does not render the evidence insufficient to support the conviction.

**C. Control, Supervision, or Management of a Prostitution Enterprise**

Appellant next contends that there is insufficient evidence to establish that appellant managed, controlled, or supervised a prostitution enterprise.

---

[1] It is unclear from the record the cause of the name change between the complaint and the indictment, but it does not matter. Appellant does not raise an issue regarding the inconsistency. Further, there was no challenge or objection lodged in the trial court regarding the differences and whether such differences constituted error.

4

At trial, the first woman named as a prostitute in the indictment testified that she met appellant during an interview for a job where she would be working as a masseuse. Appellant told her what the job entailed, how much she would charge by the hour and half-hour, and how much she was to pay appellant weekly for rent. Appellant instructed her that she was not to have sex with customers or do anything "like sex." However, she was clear in her testimony that appellant instructed her that the job included a "happy ending" to the massage, in which she would use her hands to manually stimulate a customer to ejaculation. For approximately a year and a half, she paid appellant weekly rent for the room. She negotiated weekly rent with appellant for the room, initially paying $500 per week and later paying only $350 per week. Appellant instructed her to charge $160 per hour and $80 per half-hour for her services. Appellant indicated that she could charge more if the customer wanted her to be "uncomfortable," meaning fully nude while performing a massage.

She testified that there were five to six women who would work daily at this particular location near Hillcroft. Appellant would post ads for all the women working that day and would charge a fee to do so. Appellant would further provide cell phones for use in responding to the ads that he posted. The phones were available to all the women who were working that day. The witness testified that every week, appellant collected rent from her during a one-on-one, closed-door meeting. Each woman would meet with appellant weekly in this same manner. According to the witness, at the beginning of her employment, appellant was not present daily, but for some time leading up to the arrest, appellant was present every day.

On June 22, 2016, she was getting ready to leave when appellant asked her if she wanted to see one last client. She agreed and stayed to meet the client who,

unbeknownst to her, was an undercover police officer. On other occasions, appellant also asked the other women working whether they wanted to meet with clients and would arrange such meetings.

A lieutenant from the Texas Department of Public Safety testified that on June 22, 2016, he found an ad for what he believed was a criminal enterprise and used the phone number from the ad to set a "date." The ad appeared to be from the same location with which he and his team were already "familiar with from a prior investigation." He inquired about time, location, and pricing for an hour-long "four hand" massage or special (a massage with two women at the same time). Upon arriving, the woman who testified at trial let him in the door and led him to a dark room with a massage table. She agreed to massage him while she was nude and give him a "happy ending" in exchange for $180. He inquired about having another woman for the "four hand" special. She then brought in five to six additional women to choose from. He chose a second woman, the second named prostitute in the indictment. This woman also agreed to provide him a massage while she was nude with a "happy ending."

A short time thereafter, there was a knock on the door of the room where he, and the women were. One of the women left the room and then everything became hectic. Upon returning to the room, the two women had a whispered conversation, questioned him about whether he was a police officer, and then both women left the room abruptly. Uniformed police officers entered and made arrests.

A special agent with the Texas Department of Public Safety testified that on June 22, 2016, he was conducting surveillance as part of the undercover investigation at the Hillcroft location. He saw appellant exit the Hillcroft location and walk toward the vehicle where he was sitting with other police officers. The officers in the unmarked police vehicle were wearing vests clearly marked with the

6

word "police" and "stuck out like a sore thumb" in this area. Appellant then turned back to the building, knocked on the door, discussed something with the woman that answered, and fled the scene. In his experience, this behavior is indicative of a person with "ties" to the place as opposed to a "john" that would otherwise just flee the scene. Shortly after the discussion between appellant and the woman at the door, five to six women wearing "provocative clothing" fled the building.

The State also proffered the evidence of appellant's actions on October 19, 2016, some four months after appellant's arrest. The special agent testified that his office conducted interviews with two women on October 10, 2016, during which at least one of the women indicated that appellant was continuing to operate out of the Hillcroft location. As a result, he continued the investigation into the operations at the Hillcroft location by sending in another undercover officer on October 19, 2016.

The surveillance team outside of the Hillcroft location observed a vehicle approach with two females and two males inside. The two females entered the Hillcroft location, while the two males remained in the vehicle. Appellant was one of the males in the vehicle. The vehicle ultimately parked right next to a surveillance vehicle. An arrest for prostitution was made at the Hillcroft location that day. The special agent testified that based on his training and experience, it is not usual for a "john" to return to a location where he has previously been in trouble for prostitution.

The lieutenant similarly testified regarding the events surrounding the October 19, 2016 investigation of the Hillcroft location. He was performing surveillance from a vehicle on an adjacent parking structure roof, roughly 1500 feet away from the Hillcroft location and facing its door. From his location, he observed a black Cadillac approach, saw two females exit, and saw the Cadillac

park directly adjacent to his own surveillance vehicle. Appellant was a passenger in the black Cadillac. The Cadillac remained in the parking space for several minutes and then moved to a different parking space. Several minutes later, the Cadillac left the parking lot. Approximately five minutes later, the Cadillac returned to roughly the same initial parking space. Based on his training and experience, he believed that appellant was "conducting countersurveillance" which he defined as "basically . . . the person that's engaging in the contraband illegal activities efforts to detect police presence or covert police presence. It's their effort to avoid apprehension."

Viewing the evidence presented in the light most favorable to the verdict, we conclude that a rational trier of fact could have concluded beyond a reasonable doubt that it was appellant's "desire" to "promote and further the venture or undertaking and bring it to a successful conclusion." *See Floyd v. State*, 575 S.W.2d 21, 24 (Tex. Crim. App. 1978) (discussing the definition of "prostitution enterprise" and the context and meaning of the word "uses" in Section 43.04). The State put forth evidence that appellant had more than just "passive knowledge" of the enterprise and was instead actively involved in the management, promotion, and control of the business in various ways. *See id.* Appellant charged rent, set prices, posted ads, provided cell phones, arranged "dates," maintained rules regarding sexual activity, and leading up to his arrest, was present daily. Appellant was at the location on the day the officers made the arrests and warned the women of police presence. Many of the women then fled. Just before the raid by police, the undercover officer was questioned about whether he was with law enforcement. On a later date, appellant was present at the Hillcroft location performing "counter-surveillance." *See Branch v. State*, 497 S.W.3d 588, 590 (Tex. App.—Eastland 2016, no pet.) (concluding there was sufficient evidence to

support defendant's conviction under Section 43.04 based on detectives' testimony regarding purpose for a male escort, defendant's driving and dropping off two prostitutes at motel, defendant's talking with the prostitutes prior to their engagement, condoms in defendant's car, and defendant's instructions not to talk because he would get a lawyer).

Appellant also contends that there was no evidence he received money from the other prostitutes, citing *Duffield v. State* in support. 643 S.W.2d 139, 140 (Tex. Crim. App. 1983). Under a different provision of the Penal Code, the Court of Criminal Appeals in *Duffield* held that the evidence was insufficient where the defendant was not shown to have either received money pursuant to an agreement to participate in the proceeds of prostitution or solicit another to engage in sexual conduct with another person for compensation. *See id.*; *see also* Tex. Penal Code § 43.03(a). Thus, in *Duffield*, the State was required to show that the defendant was more than a mere "conduit" or prostitute for the reviewing court to uphold the conviction. *Duffield*, 643 S.W.2d at 140. Under the provision applicable to appellant's case, however, neither of these elements is required to uphold his conviction. *Compare* Tex. Penal Code § 43.03, with *id.* § 43.04. Even so, from the evidence presented, a rational jury could have reasonably inferred from the prostitute's testimony that the other women also paid "rent" to appellant in the same manner.

The evidence is sufficient to show that appellant controlled, supervised, or managed a prostitution enterprise.

We overrule appellant's first issue.

## II. ADMISSIBILITY OF EVIDENCE

In his second issue, appellant argues that the trial court erred in allowing evidence of the extraneous act of appellant sitting in a car outside of the Hillcroft location on a later date and the characterization of his behavior on that date as "counter-surveillance."

### A. Legal Principles

We review the trial court's ruling under an abuse of discretion standard and will not disturb the ruling if it is within the zone of reasonable disagreement. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *see also Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Whether extraneous offense or bad act evidence has relevance apart from character conformity is a question for the trial court. *Moses*, 105 S.W.3d at 627.

Texas Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Tex. R. Evid. 404(b). However, extraneous offense or bad act evidence may be admissible when it has relevance apart from the prohibited use of showing character conformity. *See id*.; *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990). Such extraneous offense evidence may be relevant to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005). This list is illustrative, not exhaustive. *Id.* Extraneous offense evidence may be admissible when a defendant raises a defensive issue that negates one of the elements of the offense. *Id*.

10

**B. Background**

The State proffered the evidence of appellant's actions on October 19, 2016, some four months after appellant's arrest, detailed above in Section II, Part C of this opinion. In addition to the testimony regarding appellant's counter-surveillance, in closing the State argued, "Why would a john be present another day after his arrest for prostitution at that location being more involved [sic]? Unless [appellant] had a loyalty program or a frequent flier miles with a prostitution enterprise, there is no reasonable explanation as to why he was there yet again."

**C. Analysis**

The evidence put forth by the State and admitted by the trial court is relevant to the element of whether appellant was controlling, supervising, or managing a prostitution enterprise at the Hillcroft location. It is also relevant to show that appellant is not merely a "john" with bad timing in visiting the Hillcroft location on the day of the police raid. *See Alvarez v. State*, 813 S.W.2d 222, 225 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (evidence of counter-surveillance by defendant used to show defendant's knowledge, as well as care, control, and management of drugs in transport). Thus, because the evidence had relevance apart from character conformity, the trial court did not abuse its discretion in overruling appellant's Rule 404(b) objection.

We overrule appellant's second issue.

## III. CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgment.

/s/    Ken Wise
       Justice

Panel consists of Chief Justice Frost and Justices Wise and Hassan. (Hassan, J., concurring).

Do Not Publish — TEX. R. APP. P. 47.2(b).