Opinion issued March 10, 2016



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-13-00447-CR**
**NO. 01-13-00448-CR**

———————————

**SAMUEL ESPINOZA RODRIGUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1356098 & 1356099**

---

# O P I N I O N

A jury found appellant Samuel Espinoza Rodriguez guilty of felony evading arrest and aggravated assault and assessed his punishment at confinement for life for the aggravated assault charge and 50 years' confinement for the evading arrest

charge, to run concurrently. On appeal, Rodriguez, acting pro se, raises 14 issues. We affirm.

## Background

In December 2011, complainant Jose Bribiescas was celebrating his fortieth birthday with friends at a sports bar. Rodriguez approached one of Jose's friends, Claudia Atencio, and asked if he could buy her a drink. When she refused, Rodriguez confronted Jose's friend, Larry Hernandez, demanding to know whether the two were dating. Jose told Rodriguez that they did not want any problems, which led to a scuffle. After the fight was broken up, the bar's manager asked Rodriguez to leave.

Rodriguez left the bar, but later returned with a gun. He placed the gun against Jose's chest, shot him, and walked away. The bullet punctured Jose's lung. Jose's friends dragged him underneath a pool table so that Rodriguez could not see that he was still alive.

Corporal M. Davila of Harris County Constable Precinct 6 was dispatched to the bar, and learned from witnesses that Rodriguez had left the bar in a white truck with no tailgate. Corporal Davila located the truck and followed it while waiting for backup. When backup arrived, the officers attempted to stop the truck by turning on their lights and sirens. Rodriguez sped away from the officers, driving approximately 90 miles per hour in a 35 mile per hour zone. After Rodriguez lost

control of the truck and crashed it, the officers directed him to show them his hands, but Rodriguez jumped out of the truck and started running. The officers pursued Rodriguez and eventually detained him, searched the truck, and found a gun. They also returned to the bar with Rodriguez, where several witnesses identified him as the shooter.

Rodriguez was charged by complaints with aggravated assault and felony evading arrest.[1] A few months later, Rodriguez was indicted for both offenses, and on July 31, 2012, the State re-indicted him for both offenses.[2] After the re-indictment, Rodriguez moved to dismiss his appointed counsel and to have different counsel appointed on the ground that his counsel failed to object to the re-indictment. The trial court denied the request. Rodriguez later requested that he be permitted to represent himself. The trial court permitted him to do so after holding a *Faretta*[3]

---

[1] The complaints were filed in support of Rodriguez's continued detention following his initial arrest. *See* TEX. CODE CRIM. PROC. ANN. art. 15.04 ("The affidavit made before the magistrate or district or county attorney is called a 'complaint' if it charges the commission of an offense."); *Green v. State*, 872 S.W.2d 717, 721 (Tex. Crim. App. 1994) (when defendant arrested without warrant, State must obtain probable cause determination from magistrate for continued detention).

[2] One of the amended indictments, cause number 1356099, included both offenses and two new enhancement paragraphs. A second amended indictment, cause number 1356098, included only the evading arrest offense with enhancement paragraphs identical to those in the 1356099 indictment.

[3] In *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525 (1975), the United States Supreme Court recognized that a criminal defendant has the right to the assistance of counsel under the Sixth Amendment, as well as the right to waive counsel and represent himself. *Id.* at 807, 95 S. Ct. at 2527. However, once the defendant asserts his right to self-representation, a trial court judge must ascertain that he chooses to waive the right to counsel knowingly and intelligently, and must warn the defendant

hearing at which Rodriguez's court-appointed counsel was present, and the trial court admonished Rodriguez regarding the dangers and disadvantages of self-representation, and determined that Rodriguez's waiver of counsel was competent, knowing, intelligent, and voluntary. The trial court then appointed Rodriguez's previously-appointed counsel as standby counsel. Three months after the *Faretta* hearing, the State abandoned the evading arrest paragraph in the indictment in cause number 1356099, leaving only the aggravated assault charge in cause number 1356099 and only the evading arrest charge in cause number 1356098.

Pre-trial, Rodriguez moved to quash the indictments and to dismiss the evading arrest charge on the grounds that the charges were invalid because valid complaints and informations had not been filed. He also moved to quash the habitual offender enhancement paragraphs. The trial court denied these motions.

Rodriguez also filed several pre-trial motions which were granted. These included a "Motion for Court Reporter to Record All Proceedings," and a "Motion to have Written Rulings Made on All Motions Filed by the Defendant."

Before trial, Rodriguez moved for a continuance, requesting that he be permitted extra time in the law library. The trial court denied the motion.

---

of the dangers and disadvantages accompanying such a waiver. *Id.* at 835–36, 95 S. Ct. at 2541.

Rodriguez appeared at trial with standby counsel and represented himself. After the jury rejected Rodriguez's self-defense theory and found him guilty on both charges, Rodriguez appealed.

**Charging Instruments**

In his first, ninth, and twelfth issues, Rodriguez challenges the trial court's jurisdiction and the validity of the State's charging instruments. Rodriguez argues that the trial court (1) lacked jurisdiction to hear the charges against him because valid complaints were not filed, (2) erred in denying his motion to dismiss the felony evading arrest charge, and (3) erred in denying his motions to quash the indictments. Rodriguez contends that the trial court lacked jurisdiction to hear the charges against him because the State failed to file informations supported by valid complaints.

**A.     Standard of Review and Applicable Law**

The Texas Constitution guarantees to defendants the right to indictment by a grand jury for all felony offenses. *Riney v. State*, 28 S.W.3d 561, 564 (Tex. Crim. App. 2000). An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense. *Id.* at 565. "An indictment is returned by a grand jury after consideration of a charge provided by the prosecutor." *Ferguson v. State*, 335 S.W.3d 676, 681 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing TEX. CODE CRIM. PROC. ANN. art. 21.01–02). The presentation of a valid indictment vests the trial court with jurisdiction to hear the

5

charges against the defendant. *Ex parte Gibson*, 800 S.W.2d 548, 551 (Tex. Crim. App. 1990). "There is no statutory requirement for a prosecutor to file a complaint before a grand jury issues an indictment." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 21).

By contrast, an information, which "is a document filed by the prosecutor with the court to charge a person with a crime," does not require any court or grand jury review before bringing the defendant to trial. *Ferguson*, 335 S.W.3d at 682 (citing TEX. CODE CRIM. PROC. ANN. arts. 21.20, 21.22). Rather, "a sworn complaint must be provided to justify an information." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 21.22). In Texas, only misdemeanors may be prosecuted by information. *See Ex parte Krarup*, 422 S.W.2d 173, 174 (Tex. Crim. App. 1967). While a complaint must be filed to justify an information, there are other reasons that complaints are filed, unrelated to the filing of an information. Among other things, complaints may be filed to obtain a finding regarding probable cause for a person's arrest or continued detention. *See* TEX. CODE CRIM. PROC. ANN. arts. 15.03 (magistrate may issue warrant when, among other things, a person makes an oath before them that another has committed some offense), 15.04 ("The affidavit made before the magistrate or district or county attorney is called a "complaint" if it charges the commission of an offense."); *Green v. State*, 872 S.W.2d 717, 721 (Tex. Crim. App.

6

1994) (when defendant arrested without warrant, State must obtain probable cause determination from magistrate for continued detention).

We review the denial of a motion to quash an indictment de novo when reviewing a question of law. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007). Our analysis of a jurisdictional challenge is also de novo. *Dixon v. State*, 455 S.W.3d 669, 674–75 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

## B.   Analysis

Rodriguez argues that informations and valid complaints stating "the time and place of the commission of the offense as definitely as can be done by the affiant" were required to vest the trial court with jurisdiction to proceed to trial on the charges against him. Rodriguez contends that the State failed to file informations against him; therefore, the trial court lacked jurisdiction to hear the charges against him. His argument is based on the fact that complaints were initially filed against him; from this, Rodriguez concludes that the State must have been required to prosecute him by information. Because informations supported by valid complaints were not filed, Rodriguez argues that the trial court lacked jurisdiction and both indictments should have been quashed.

The charges against Rodriguez were both felony charges brought by indictment, not by information. Because the charges against Rodriguez were felonies, the State was required to prosecute Rodriguez by indictment. *See Riney*,

7

28 S.W.3d at 564 (Texas Constitution guarantees right to indictment by grand jury for all felonies); *Ex parte Krarup*, 422 S.W.2d at 174 (only misdemeanors may be prosecuted by information). "There is no statutory requirement for a prosecutor to file a complaint before a grand jury issues an indictment." *Ferguson*, 335 S.W.3d at 682 (citing TEX. CODE CRIM. PROC. ANN. art. 21). And, the filing of a complaint does not necessitate the filing of an information, because a complaint may be filed for other purposes. Although the State initially filed complaints in connection with Rodriguez's arrest and continued detention, it later obtained indictments, which vested the trial court with jurisdiction over the felony charges. *See Ex parte Gibson*, 800 S.W.2d at 551. Rodriguez did not and does not challenge the indictments themselves. Accordingly, we conclude that the trial court had jurisdiction to hear the charges against Rodriguez and did not err in denying his motions to dismiss and to quash the indictments. *See id*.

We overrule Rodriguez's first, ninth, and twelfth issues.

### Enhancements

In his tenth issue, Rodriguez contends that the trial court erred in denying his motions to quash the enhancement paragraphs in the indictments without holding an evidentiary hearing. He claims the enhancement paragraphs were invalid and void.

We review a trial court's decision to rule on a motion to quash without an oral hearing for an abuse of discretion. *See Hicks v. State*, 508 S.W.2d 400, 403 (Tex.

8

Crim. App. 1974) (citing TEX. CODE CRIM. PROC. ANN. art. 28.01). Generally, the trial court is not required to hold a hearing on a motion to quash, and the decision to hold such a hearing is left to the trial court's sound discretion. *See id.* The defendant bears the burden of proof on a motion to quash, and the trial court properly denies the motion where the defendant offers no proof of the allegations contained in the motion. *Bell v. State*, 814 S.W.2d 229, 231 (Tex. App.—Houston [1st Dist.] 1991, writ ref'd). We review the denial of the motion itself de novo. *Lawrence*, 240 S.W.3d at 915.

When prior convictions used for enhancement purposes are collaterally attacked, the judgments reflecting those prior convictions are presumed to be regular. *Swanson v. State*, 722 S.W.2d 158, 164 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd). The accused bears the burden of defeating that presumption. *Id.*

Here, Rodriguez moved to quash the enhancement paragraphs on the ground that the prior convictions were invalid and void. But Rodriguez offered no evidence to support this claim, nor did he request a hearing on the motions. And the trial court was not required to hold a hearing on Rodriguez's motions to quash the enhancement paragraphs. *See Hicks*, 508 S.W.2d at 403 (trial court was not required to hold hearing on motion to quash). Accordingly, we conclude that the trial court did not abuse its discretion in ruling on the motions without holding a hearing. *See id.* And, given Rodriguez's failure to carry his burden in adducing evidence to support his

9

motions, we conclude that the trial court did not err in denying the motion to quash because Rodriguez failed to meet his evidentiary burden. *See id.*

We overrule Rodriguez's tenth issue.

## Self-Representation

Rodriguez's second, fourth, eleventh, and fourteenth issues relate to his decision to waive his right to counsel and proceed pro se. He argues in his second issue that the trial court erred by failing to properly admonish him regarding the dangers and disadvantages of self-representation, and he argues in his fourteenth issue that the trial court failed to properly admonish him regarding both charges. In his fourth issue, he contends his standby counsel was ineffective because she had a conflict of interest, and in his eleventh issue, he contends that the trial court erred in denying his motion for continuance, which would have provided Rodriugez extra law library time.

### A. Propriety of Admonishments Regarding Self-Representation

In his second issue, Rodriguez argues that he was not properly admonished regarding the dangers and disadvantages of self-representation and, in his fourteenth issue, he argues that, even if he was properly admonished, he was only properly admonished with respect to the aggravated assault charge, and not the evading arrest

charge. He contends, therefore, that he did not knowingly and intelligently waive his right to counsel with respect to both charges.

## 1. Standard of Review and Applicable Law

The Sixth Amendment of the United States Constitution guarantees both the right to counsel and the corresponding right to self-representation. *See* U.S. CONST. amend. VI; *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 2533 (1975); *Hathorn v. State*, 848 S.W.2d 101, 122–23 (Tex. Crim. App. 1992); *see also Hatten v. State*, 71 S.W.3d 332, 334 (Tex. Crim. App. 2002) (noting that *Faretta* rights are triggered when accused contests guilt); TEX. CODE CRIM. PROC. ANN. art. 1.05 (West 2005) (recognizing right of accused to be heard by himself, through counsel, or both). In *Faretta*, the Supreme Court recognized that "[w]hen an accused manages his own defense, he relinquishes . . . many of the traditional benefits associated with the right to counsel." 422 U.S. at 835, 95 S. Ct. at 2541. The Court concluded that in order to represent himself, an "accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id.* Thus, a defendant must make a decision to waive counsel competently, voluntarily, knowingly and intelligently. *Godinez v. Moran*, 509 U.S. 389, 400, 113 S. Ct. 2680, 2687 (1993); *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541.

"The decision to waive counsel and proceed pro se is made 'knowingly and intelligently' if it is made with a full understanding of the right to counsel, which is

11

being abandoned, as well as the dangers and disadvantages of self-representation." *Moore v. State*, 999 S.W.2d 385, 396 n.5 (Tex. Crim. App. 1999); *Cudjo v. State*, 345 S.W.3d 177, 184 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). "If such factors are not otherwise apparent from the record, a trial court's inquiry regarding the accused's waiver of counsel should center on his background, age, experience, and education." *Cudjo*, 345 S.W.3d at 184 (citing *Johnson v. State*, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988)). To be valid, a defendant's waiver must also be made with an apprehension of the nature of the charges against him. *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984). "The trial court, however, need not follow a formulaic questioning or particular script in ascertaining the knowing and voluntary nature of an accused's waiver of counsel, and a written waiver of the right to counsel is not required." *Cudjo*, 345 S.W.3d at 184 (citing *Burgess v. State*, 816 S.W.2d 424, 428–29 (Tex. Crim. App. 1991)). "The accused should be aware there are technical rules of evidence and procedure and he will not be granted any special consideration solely because he asserted his pro se rights." *Id.* (citing *Johnson*, 760 S.W.2d at 279).

We review the factual issue of whether a defendant has clearly and unequivocally invoked the right to self-representation for an abuse of discretion. *See DeGroot v. State*, 24 S.W.3d 456, 457–58 (Tex. App.—Corpus Christi 2000, no pet.). We view the evidence in the light most favorable to the trial court's ruling,

and we imply any findings of fact supported by the record and necessary to affirm the trial court's ruling when the trial court did not make explicit findings. *See Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010).

**2. Analysis**

**a. Did the trial court adequately admonish Rodriguez of the dangers and disadvantages of self-representation?**

In his second issue, Rodriguez argues that he was not properly admonished regarding the dangers and disadvantages of self-representation. We conclude that the trial court did not abuse its discretion in finding that Rodriguez competently, voluntarily, knowingly, and intelligently waived his right to counsel with respect to both charges. The trial court first inquired into Rodriguez's background, age, experience, and education. *See Johnson*, 760 S.W.2d at 278. Rodriguez told the trial court that he was born in Lubbock, had a G.E.D., could read and write English, had no disabilities or handicaps, and that he had no legal training but had previously argued a case before the Supreme Court of the United States. He also stated that he was familiar with the Texas Penal Code and Code of Criminal Procedure.

The trial court next admonished Rodriguez regarding the dangers and disadvantages of self-representation. Among other things, the trial court told Rodriguez that by waiving the right to counsel, he would not be able to later claim ineffective assistance of counsel. The trial court also told Rodriguez that he would be expected to comply with all the evidentiary and procedural rules with which a

13

lawyer would be expected to comply and that he would not be granted any special consideration because of his lack of formal legal training.

The trial court asked Rodriguez whether, having considered these disadvantages of self-representation, he was waiving the right to counsel voluntarily, and Rodriguez stated that he was. The trial court repeatedly reminded Rodriguez that if he waived the right to counsel, he would not be able to blame anyone else for any mistakes or failures at trial. The trial court also ensured that Rodriguez understood that, with the enhancements alleged, the range of punishment was 25 years to life in prison. In light of the extensive colloquy related to self-representation, we conclude that the trial court did not abuse its discretion in concluding that Rodriguez was properly informed of the dangers and disadvantages of self-representation and that his decision to waive counsel was competent, knowing, voluntary, and intelligent. *See, e.g.*, *Cudjo*, 345 S.W.3d at 185 (waiver was voluntary, knowing, and intelligent after trial court inquired into appellant's background, education, and ability, admonished him that proceeding pro se was dangerous and that he would be held to same standards as lawyer).

We overrule Rodriguez's second issue.

### b. Did Rodriguez properly waive counsel for both charges?

In his fourteenth issue, Rodriguez contends that, even if the trial court's admonishments were adequate, his waiver of counsel extended only to the

aggravated assault charge, because the trial court did not expressly mention the evading arrest charge during the colloquy regarding self-representation.

At the *Faretta* hearing, the trial court asked Rodriguez if he understood the charges against him and Rodriguez responded that he was not sure about which of his four pending cases the State was prosecuting. The State responded that it was proceeding on the indictment in cause number 1356099. At the time of the *Faretta* hearing, that indictment charged Rodriguez with both the aggravated assault charge and the evading arrest charge. The trial court directed the State to give Rodriguez the entire case file and the State indicated that would give Rodriguez everything that it had in all the pending cases.

The evading arrest charge had also been separately indicted in cause number 1356098 with enhancement paragraphs identical to those charged in cause number 1356099. After the *Faretta* hearing, the State struck the evading arrest charge from the indictment in cause number 1356099 and proceeded with both the 1356098 (evading arrest) and 1356099 (aggravated assault) indictments, which were substantively identical to what was charged in the 1356099 indictment at the time of the *Faretta* hearing. Thus, although the State did not say at the *Faretta* hearing that it was proceeding on the indictment in cause number 1356098, Rodriguez's waiver was valid as to evading arrest charged in 1356098 because, at the time of the *Faretta* hearing, the substance of 1356098 was charged in 1356099. The clerk's record also

15

shows that Rodriguez understood that he represented himself with respect to both charges. After the *Faretta* hearing, Rodriguez filed numerous motions in both cases. He also insisted on continuing self-representation after the State proceeded on both charges. Accordingly, we conclude Rodriguez's waiver was valid as to both charges.

We overrule Rodriguez's fourteenth issue.

## B. Standby Counsel's Alleged Conflict of Interest

In his fourth issue, Rodriguez contends that his standby trial counsel was ineffective because she had a conflict of interest.

A lawyer may provide ineffective assistance of counsel if she has a conflict of interest. *See Odelugo v. State*, 443 S.W.3d 131, 136 (Tex. Crim. App. 2014). The appellant bears the burden of proof by a preponderance of the evidence on a claim of conflict-of-interest ineffective assistance. *Id.* But "when a convicted defendant has insisted upon self-representation, any subsequent claim of ineffective assistance of counsel is not to be considered." *Perez v. State*, 261 S.W.3d 760, 766 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Faretta*, 422 U.S. at 834 n.46).

Rodriguez competently, knowingly, intelligently and voluntarily waived his right to counsel. As the trial court admonished, a consequence of doing so is the forfeiture of a subsequent ineffective assistance of counsel claim. *Id.* Accordingly,

Rodriguez cannot meet his burden on his conflict-of-interest ineffective assistance claim. *See id.*

We overrule Rodriguez's fourth issue.

## C. Access to Law Library

In his eleventh issue, Rodriguez contends that the trial court abused its discretion in denying his motion for a continuance which would have provided him additional access to the law library.

We review a trial court's ruling on a motion for continuance for abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007); *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996). In *Bounds v. Smith*, 430 U.S. 817 (1977), "[t]he United States Supreme Court . . . recognized that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Johnson v. State*, 257 S.W.3d 778, 780 (Tex. App.—Texarkana 2008, pet. ref'd) (citing *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *overruled in part on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996) (disclaiming *Bounds* to the extent that it suggests that the State must enable prisoners to discover grievances and litigate effectively)). However, inmates do not have an "abstract, freestanding right to a law library." *Lewis*, 518 U.S. at 351. Moreover, numerous federal courts,

including the Fifth Circuit, "have held that a prisoner who knowingly and voluntarily waives appointed representation by counsel in a criminal proceeding is not entitled to access to a law library." *See Johnson*, 257 S.W.3d at 780 (collecting cases); *see also Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996) ("[H]aving rejected the assistance of court-appointed counsel, [a defendant] had no constitutional right to access a law library in preparing the pro se defense of his criminal trial."). Thus, a defendant who rejects the offer of appointed counsel and represents himself with the assistance of standby counsel cannot complain about lack of law library access. *See Bright v. State*, 585 S.W.2d 739, 744 (Tex. Crim. App. 1979) (rejecting appellant's claim regarding library access because "an attorney was appointed to represent appellant, and even after appellant's request to represent himself was granted, this attorney was instructed by the trial court to continue as standby counsel"); *Johnson*, 257 S.W.3d at 781 (State was not obligated to provide appellant access to law library after appellant elected to proceed pro se and trial court appointed standby counsel).

Here, the trial court appointed counsel for Rodriguez, but Rodriguez competently, intelligently, knowingly, and voluntarily chose to waive his right to counsel and represent himself. Before he made that choice, the trial court admonished him regarding the dangers and disadvantages of self-representation. The trial court expressly warned him that he would not be granted any special consideration because of his lack of formal legal training. Knowing this, Rodriguez

18

refused the offer of appointed counsel and chose to represent himself; nevertheless, the court appointed Rodriguez's counsel as standby counsel, and she attended the trial. Accordingly, we hold that the trial court did not abuse its discretion in denying Rodriguez's motion for continuance for additional access to the law library. *See Bright*, 585 S.W.2d at 744; *Johnson*, 257 S.W.3d at 780; *Degrate*, 84 F.3d at 769.

We overrule Rodriguez's eleventh issue.

## *Brady* Complaint

In his fifth issue, Rodriguez argues that his convictions should be reversed because the State violated *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963), by failing to preserve a surveillance video of the shooting.

### A. Standard of Review and Applicable Law

The law distinguishes between the State's suppression of material, exculpatory evidence and the State's failure to preserve potentially useful evidence. If, after request, the State suppresses evidence material to guilt or punishment that is favorable to an accused, this violates due process regardless of whether the State acted in bad faith. *Brady*, 373 U.S. at 87, 83 S. Ct. at 1196–97. However, the State's failure to preserve potentially useful evidence does not violate due process unless the defendant shows that the loss of the evidence resulted from "bad faith on the part of the police." *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 337 (1988)). "Bad faith

19

entails some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful." *Ex parte Napper*, 322 S.W.3d 202, 238 (Tex. Crim. App. 2010).

## B. Analysis

Rodriguez argues that he is entitled to a new trial because the surveillance video of the shooting was not preserved. At trial, the owner of the sports bar testified that the investigating officers asked him for a copy of the surveillance video from the night of the shooting. He attempted to copy the video onto a thumb drive and gave the drive to one of the investigating officers, Officer Caballero, believing that he had successfully copied the video.

Caballero testified that he took the drive to the HPD property room where it was tagged into evidence and stored. He testified that it was later discovered that the video had not properly copied to the drive and that the drive was actually blank. Caballero returned to the bar to get a new copy of the video, but the surveillance system had recorded over the video by that time. Rodriguez contends that the video might have exonerated him, making it potentially useful evidence. *See Ramirez v. State*, 301 S.W.3d 410, 420 (Tex. App.—Austin 2009, no pet.) (destroyed videotape was "potentially useful evidence," not material, exculpatory evidence, because defendant claimed only that tape might have exonerated him and no evidence showed tape would have exonerated defendant). Thus, the State failed to preserve

potentially useful evidence. *See id.* Rodriguez therefore must demonstrate that the State failed to preserve the video in bad faith.

Rodriguez contends that he has shown the State acted in bad faith because once police officers established that a video of the shooting existed and tagged it into evidence, it became the State's duty to preserve evidence. But the mere fact that the video was not preserved does not show that the State acted in bad faith. Indeed, the only testimony regarding the loss of the video indicates that the failure to preserve the video was inadvertent, and the error occurred before the video was tagged into evidence, not afterwards. Accordingly, we hold that Rodriguez has not shown that the failure to preserve the video violated his due process rights. *See Neal*, 256 S.W.3d at 280 (overruling appellant's claim that State violated due process because appellant presented no evidence that police acted in bad faith); *Mahaffey v. State*, 937 S.W.2d 51, 53 (Tex. App.—Houston [1st Dist.] 1996, no writ) (appellant did not demonstrate State erased videotape in bad faith where only evidence in record regarding erased videotape was that to best of officer's knowledge, no one had erased tape).

We overrule Rodriguez's fifth issue.

**Alleged False Testimony of Complainant**

In his thirteenth issue, Rodriguez contends that the trial court erred by permitting the State to adduce Jose's false testimony regarding the medical treatment he received after the shooting.

## A. Standard of Review and Applicable Law

"The Due Process Clause of the Fourteenth Amendment can be violated when the State uses false testimony to obtain a conviction, regardless of whether it does so knowingly or unknowingly." *Ex parte Robbins*, 360 S.W.3d 446, 459 (Tex. Crim. App. 2011). "Testimony need not be perjured to constitute a due-process violation; rather, 'it is sufficient that the testimony was false.'" *Ex parte Chavez*, 371 S.W.3d 200, 208 (Tex. Crim. App. 2012) (quoting *Ex parte Robbins*, 360 S.W.3d at 459). "The question is whether the testimony, taken as a whole, gives the jury a false impression." *Id.* (citing *Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011)). To constitute a due-process violation, the allegedly false testimony must also be material. *See Ex parte Chavez*, 371 S.W.3d at 208. Materiality in this context means that there must be a reasonable likelihood that the false testimony affected the defendant's conviction or sentence. *See id.*

## B. Analysis

Rodriguez contends that Jose provided false testimony because his testimony at trial regarding his condition and medical treatment after the shooting differed from

22

information contained in his medical records. Rodriguez complains that Jose's testimony conflicted with his medical records in the following ways:

- Jose testified that he blacked out, lost his breath and lost consciousness after being shot, but the Houston Fire Department report stated that he was walking around when they arrived.

- Jose testified that he believed he was taken to MD Anderson, but the Houston Fire Department report states he was taken to Memorial Hermann.

- Jose testified that he believed that he was in the hospital two and a half to three weeks. Rodriguez contends that the medical records show that he was in the hospital "maybe 1 week."

- Jose testified that he was in intensive care for "about a week." Rodriguez contends that the records show that he was in intensive care for three days.

- Jose testified that the last thing he remembered after the shooting was being on Life Flight on the way to the hospital, but Rodriguez contends the medical records show that he was transported by ambulance.

- Jose testified that he saw his son in the intensive care unit two days after he was shot, but Rodriguez contends that a chaplain's letter in the medical records stated that the chaplain took Jose's son to see him the same day that he was shot.

Assuming that the discrepancies about which Rodriguez complains rise to the level of false testimony, we conclude that the evidence fails to show a reasonable likelihood that the complained-of testimony affected Rodriguez's conviction or sentence. *See Ex parte Chavez*, 371 S.W.3d at 208. Rodriguez disputes neither that he shot Jose at point-blank range nor that Jose sustained serious bodily injury and was hospitalized for days after the shooting. On this record, the alleged disparities

between Jose's testimony and the medical records are not material and accordingly, do not constitute a due process violation. *See id.*

We overrule Rodriguez's thirteenth issue.

## Impartiality of Trial Court

In his seventh issue, Rodriguez complains that the trial court deprived him of a fair and impartial trial by appointing the same attorney who had previously been appointed to represent Rodriguez after he was re-indicted. Rodriguez argues that the trial court's partiality is evident from the fact that the trial court re-appointed the same counsel Rodriguez had previously sought to dismiss.

Absent a clear showing of bias, we presume a trial court's actions were impartial. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). To reverse a judgment based on improper conduct by the judge, we must find (1) that judicial impropriety occurred and (2) prejudice probably resulted. *Id.*; *Luu v. State*, 440 S.W.3d 123, 128–29 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Only in the rarest circumstances are judicial rulings demonstrative of the degree of favoritism or antagonism required to show that a fair and impartial trial is impossible. *Liteky*, 510 U.S. at 555, 114 S. Ct. at 1157; *see In re M.C.M.*, 57 S.W.3d 27, 33 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (insufficient showing of antagonism in, for example, judge's refusal to permit attorney to read from documents in evidence). Such rulings are generally best brought as grounds for appeal, not as evidence of

judicial bias. *See Liteky*, 510 U.S. at 555, 114 S. Ct. 1157; *Grider v. Boston Co.*, 773 S.W.2d 338, 346 (Tex. App.—Dallas 1989, writ denied) ("proper remedy was to assign error on the basis of the adverse rulings"). Our review encompasses the entire record. *Luu*, 440 S.W.3d at 129.

Rodriguez contends that the order appointing counsel improperly indicates that he requested appointment of the same counsel and that this is evidence of judicial impropriety. But the order about which Rodriguez complains does not say so—it indicates only that he requested appointed counsel and that the trial court appointed his previously-appointed counsel. A defendant does not have the right to have his own choice of appointed counsel, and unless he waives his right to counsel and chooses to represent himself, or shows adequate reason for appointment of new counsel, he must accept the counsel appointed by the court. *Thomas v. State*, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977); *Garner v. State*, 864 S.W.2d 92, 98 (Tex. App.—Houston [1st Dist.] 1993 pet. ref'd). Rodriguez made no showing of a reason for appointing new counsel.

Accordingly, we hold that Rodriguez has not demonstrated that the trial court deprived him of a fair and impartial trial. *See Brumit*, 206 S.W.3d at 645.

We overrule Rodriguez's seventh issue.

**Complaints Relating to Reporter's Record**

In his third issue, Rodriguez contends that he is entitled to a new trial because the court reporter failed to record all the trial proceedings. The trial court granted Rodriguez's "Motion for Court Reporter to Record All Proceedings," which requested that the reporter record all proceedings, including bench conferences. However, Rodriguez contends that the court reporter failed to record bench conferences and that the record contains other omissions, such as missing words and unclear notations.

## A. Failure to Record Bench Conferences

Government Code section 52.046 requires an official court reporter, on request, to attend all sessions of court and furnish a transcript of the reported evidence or other proceedings. TEX. GOV'T CODE ANN. § 52.046(a). The Court of Criminal Appeals has held that a defendant must object to the court reporter's failure to record a portion of the trial proceedings to preserve error. *See Valle v. State*, 109 S.W.3d 500, 508–09 (Tex. Crim. App. 2003). In particular, to the extent that a defendant complains that the court reporter failed to record bench conferences, the defendant waives the issue if he does not object at trial to the reporter's failure to record conferences, even if the trial court has granted a motion to record conferences. *See Moore v. State*, 999 S.W.2d 385, 398 (Tex. Crim. App. 1999); *see also Velazquez v. State*, 222 S.W.3d 551, 556–57 (Tex. App.—Houston [14th Dist.] 2007, no pet.)

(holding that complaint that court reporter failed to record bench conferences was not preserved for appellate review because defendant did not object to lack of court reporter's presence at conferences). To be entitled to a new trial based on a lost or destroyed reporter's record, the appellant must demonstrate that the omitted portions are necessary to the appeal's resolution. *See* TEX. R. APP. P. 34.6(f).

Rodriguez did not object at trial to the reporter's failure to record bench conferences. Accordingly, his argument regarding the reporter's failure to record bench conferences is waived. *See Moore*, 999 S.W.2d at 398; *see also Velazquez*, 222 S.W.3d at 556–57.

## B.    Other Errors and Omissions

The State argues that Rodriguez has also waived his argument that the record contains other errors and omissions because Rodriguez failed to raise these issues before filing his brief to permit the record to be corrected, if necessary, before his brief was filed. Rodriguez responds that he did raise his complaints before he filed his brief, but the motions he points to raised only the issue of whether the reporter had filed copies of the pretrial hearing in which Rodriguez was admonished regarding the dangers and disadvantages of self-representation. The reporter has filed those volumes.

If a dispute arises after the reporter's record has been filed in the appellate court, we may submit the dispute to the trial court for resolution, but we are not

required to do so. *See* TEX. R. APP. P. 34.6(e)(3) (appellate court may submit dispute regarding reporter's record to trial court). Here, Rodriguez did not request that we abate the case to the trial court for correction under Texas Rule of Appellate Procedure 34.6(e). Nor did he raise his claims about allegedly missing words and unclear notations in the reporter's record before his brief was filed. Instead, he argues in his brief that these alleged errors and omissions entitle him to a new trial. *See id.* 34.6(f)(3).

Although Rodriguez alleges that various words are missing and certain notations in the record are unclear, he does not explain how, if at all, any of these alleged errors or omissions bear on any issue he has raised or could have raised in this appeal, nor does he demonstrate that there is anything missing that is necessary to the appeal's resolution. *Id.* (appellant entitled to new trial only if reporter's record is lost or destroyed and missing portion is "necessary to the appeal's resolution"). He argues only that the alleged errors and omissions violate the trial court's order granting his motion for the reporter to record all of the proceedings. Because Rodriguez fails to demonstrate how he was harmed by any error or omission in the record, we overrule Rodriguez's third issue. *See* TEX. R. APP. P. 34.6(e), (f).

## Admissibility of 911 Recording

In his sixth issue, Rodriguez contends that the trial court erred in admitting State's Exhibit 17, an audio recording of a witness's 911 call, because the version of

the recording filed pre-trial was on a CD of a brand different than that of the CD admitted at trial and included in the reporter's record on appeal. Rodriguez does not allege that the recording contained on the CD in the appellate record is different than the recording that was played and admitted at trial.

We may not determine whether a trial court erred in the admission of evidence, unless error is preserved by a proper objection and a ruling on that objection. *See Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). A proper objection is one that is timely and specific. *See* TEX. R. APP. P. 33.1; *Martinez*, 98 S.W.3d at 193.

Here, Rodriguez made the following objection to the admission of State's Exhibit 17: "The copy I was given says there is no audio since the past six months, and I object to it because I never received a copy of it." But on appeal, Rodriguez does not complain that he never received a copy of the recording, and acknowledges that the trial court overruled his objection because the recording had been in the clerk's file, to which Rodriguez had access, for about a year before trial. Instead, Rodriguez argues that the copy of the recording that was filed pre-trial was on a different brand of CD than the copy admitted at trial and included in the reporter's record on appeal.

However, Rodriguez did not object to the admission of the recording at trial on the ground that the brand of CD which contained the recording differed from the

29

brand of CD in the clerk's file. Accordingly, we hold that Rodriguez failed to preserve the complaint he advances on appeal. *See* TEX. R. APP. P. 33.1; *Martinez*, 98 S.W.3d at 193.

Moreover, and to the extent that Rodriguez is attempting to raise any other complaint regarding the admission of the 911 recording, he does not explain how the admission of the call had a substantial and injurious effect or influence in determining the jury's verdict. *See* TEX. R. APP. P. 44.2(b) (non-constitutional error must be disregarded unless it affects substantial rights of defendant); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (substantial rights are not affected by erroneous admission of evidence unless error had substantial and injurious effect or influence in determining jury's verdict); *Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002) (error in admission of evidence is non-constitutional and therefore, subject to harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure). Thus, we conclude any error in admitting State's Exhibit 17 was harmless. *See* TEX. R. APP. P. 44.2(b); *Motilla*, 78 S.W.3d at 355; *Potier v. State*, 68 S.W.3d at 666.

We overrule Rodriguez's sixth issue.

**Failure of Trial Court to Enter Written Rulings on Rodriguez's Motions**

In his eighth issue, Rodriguez contends that the trial court erred by not issuing written rulings on every motion Rodriguez filed.

Rodriguez filed a "Motion to have Written Rulings Made on All Motions Filed by the Defendant," and the trial court granted the motion on the first day of trial. On appeal, Rodriguez complains that the trial court did not actually enter written rulings on all of his motions, and points to a number of motions in the record that were not disposed of by written order. Rodriguez contends that the failure to enter written rulings on all motions "prejudiced" his appeal.

Even if the trial court erred in failing to enter written rulings on these motions, we would disregard these errors unless they affected Rodriguez's substantial rights. *See* TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Rodriguez contends that the failure to enter written rulings "prejudiced" his appeal, but he does not explain how, if at all, the failure to enter written rulings affected his substantial rights. Accordingly, the trial court's failure to enter written rulings on every motion filed by Rodriguez does not entitle Rodriguez to reversal of his convictions. *See* TEX. R. APP. P. 44.2(b).

We overrule Rodriguez's eighth issue.

## Conclusion

We affirm the judgments of the trial court.


Rebeca Huddle
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.

Publish.  TEX. R. APP. P. 47.2(b).

32