

# NUMBER 13-17-00121-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GEORGE RICHARD HOSEY SR.,                                              Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

On appeal from the 24th District Court
of Goliad County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Contreras, and Hinojosa
Memorandum Opinion by Justice Hinojosa**

Appellant George Richard Hosey Sr. appeals his conviction for assault of a public

servant, a second-degree felony enhanced by appellant's prior felony conviction. *See*

TEX. PENAL CODE ANN. §§ 12.42, 22.01(b)(1) (West, Westlaw through 2017 1st C.S.). A

jury found appellant guilty and assessed punishment of seven years' imprisonment in the

Texas Department of Criminal Justice–Institutional Division and a $10,000 fine. The trial

court sentenced appellant accordingly.   By one issue, which we treat as two, appellant argues the trial court abused its discretion in overruling appellant's objection to eighteen minutes of video surveillance footage because (1) the State did not preserve other portions of the video which might have contained exculpatory information, and (2) the trial court's ruling violated the rule of optional completeness.   *See* TEX. R. EVID. 107.   We affirm.

## I.   BACKGROUND

Appellant, who was then an inmate at the Goliad County Jail, was charged by indictment with assault of a public servant for allegedly striking Randy Galneau, a paramedic employed by Goliad County, "on his head and by knocking him to the floor."[1] *See* TEX. PENAL CODE ANN. § 22.01(b)(1).

During a hearing held outside the presence of the jury, appellant argued against the admission of videotape surveillance which captured the alleged assault.   Appellant complained that only eighteen minutes of footage was preserved by the State and that the remaining footage, which had been deleted, "can be exculpatory[.]"   Appellant further argued that the video was prejudicial because "[t]here's no indication of what happened before or what happened after this situation occurred."   The State represented that video footage captured by jail surveillance cameras is available for nine days "before the system recycles itself reusing the recorded mechanism."   The State noted that the Goliad County Jail preserved the footage immediately preceding and following the alleged assault, but

---

[1] Appellant was also indicted in a second cause for assaulting a Goliad County jailer during the same incident.   The two causes were tried together, but the jury found appellant not guilty in the second cause.

the remaining footage was written over as a matter of routine. The trial court overruled appellant's objection and admitted the video exhibit subject to "proper tender . . . and upon the establishment of its relevance."

Galneau testified that he responded to the Goliad County Jail concerning a possible head injury to an inmate. Upon his arrival to the jail infirmary, Galneau encountered appellant lying on the floor. Galneau and his partner attempted to assess appellant's condition, but appellant was uncooperative. Galneau then attempted to get appellant onto a stretcher, so they could transport him to the hospital. After seating appellant partially on the stretcher, appellant rolled to the ground. Appellant then stood up and ran to his cell. A jailer escorted appellant back to the infirmary, at which time appellant charged toward Galneau, punching Galneau three or four times and striking him around both eyes. While defending himself, Galneau threw appellant to the ground, where appellant continued to punch him. Almost immediately, a jailer arrived and subdued appellant. Galneau then successfully secured appellant to the stretcher. Galneau and his partner later transported appellant to the hospital for examination. Galneau testified that he sustained two black eyes, abrasions, and injuries to his rotator cuff, right side, and left knee.

The State introduced various photographs depicting Galneau's injuries, which were admitted and published to the jury. The State then introduced jail surveillance footage of the assault. The trial court overruled appellant's objection concerning whether the State established a proper predicate for admission of the video. The State did not publish the video to the jury, but the exhibit was made available to the jury during its

deliberations.

The video begins at 10:16 p.m., prior to the arrival of the paramedics, and shows appellant lying on a mat on the floor in what appears to be the jail infirmary. At 10:18, two paramedics arrive with a stretcher. The video shows the paramedics examining appellant and taking his blood pressure while he remains on the floor. At 10:24, appellant stands up and walks out of the room. Two jailers escort appellant back a minute later. At 10:26, appellant stands up and shoves Galneau. He then charges Galneau, striking him with his fists and both men fall to the ground. At this point, a jailer arrives and subdues appellant. At 10:28, Galneau and his partner begin securing appellant to the stretcher, and appellant appears to cooperate. There are no further incidents, and the video ends at 10:34 p.m.

The jury returned a guilty verdict. Appellant filed a motion for new trial, which the trial court denied. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

We review a trial court's evidentiary rulings under an abuse-of-discretion standard. *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010). We will uphold the trial court's ruling if it is correct under any theory of law applicable to the case. *Id*. A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

### B. Analysis

#### 1. *Brady* Claim

4

By his first issue, appellant argues that "[t]he trial court erred in admitting [the jail surveillance video] when exculpatory portions of it had been erased, in violation of *Brady v. Maryland*." *See* 373 U.S. 83 (1963). Appellant maintains that "the trial court should have exercised discretion and not admitted [the video] into evidence."

The State has an affirmative duty to turn over exculpatory or impeachment evidence favorable to the defendant that is material either to guilt or to punishment. *Giglio v. United States*, 405 U.S. 150, 153–54 (1972); *Brady*, 373 U.S. at 87; *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). The State's suppression of evidence favorable to the accused violates a criminal defendant's due process rights. *Brady*, 373 U.S. at 87. To establish a *Brady* violation, a defendant must show: (1) the State failed to disclose evidence, regardless of the prosecution's good faith or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011).

Appellant's claim, however, concerns the State's failure to *preserve* evidence, the precise nature of which is unknown. Such a claim is distinct from a *Brady* claim. *See Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999). In *Arizona v. Youngblood*, the United States Supreme Court held that the failure to preserve potentially useful evidence is not a denial of due process unless a criminal defendant can show bad faith. 488 U.S. 51, 58 (1988); *see Thomas v. State*, 841 S.W.2d 399, 402 n.5 (Tex. Crim. App. 1992). *Youngblood*, and its requirement that the defendant establish bad faith, is properly applied to cases in which the government no longer possesses the disputed

5

evidence, whereas *Brady* is properly applied to cases in which exculpatory evidence remains in the government's possession. *See Little*, 991 S.W.2d at 866.

*Youngblood* rationalized the differing standards as follows:

Part of the reason for the difference in treatment is found in the observation made by the Court in [*California v. Trombetta*, 467 U.S. 479, 486 (1984)], that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Part of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.

488 U.S. at 57–58 (citation omitted).

Appellant speculates that "had the remainder of the jail surveillance video . . . not been erased by the Goliad County jail's recording system . . . appellant's trial lawyer may have been able to show his jury the circumstances leading to the incident." Although appellant presents his complaint under *Brady*, it is more properly considered as a complaint of the destruction of "potentially useful evidence." *See id.* at 57; *see Rodriguez v. State*, 491 S.W.3d 18, 31 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (treating *Brady* claim about lost surveillance video as a *Youngblood* claim); *Burdick v. State*, 474 S.W.3d 17, 27 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (same).

Appellant did not contend at trial and does not contend on appeal that the State's actions were taken in bad faith. Further, the record evidence does not demonstrate bad faith. The video of the incident begins just before Galneau's arrival with his partner and

continues to the moment of their departure when appellant is secured to a stretcher. Appellant does not allege that Galneau interacted with him at any point prior to the events depicted in the video. The State represented that the remaining footage was deleted nine days later because the Goliad County Jail's surveillance system "recycles itself reusing the recording mechanism." Appellant does not dispute this explanation. We therefore conclude that the trial court did not abuse its discretion in overruling appellant's objection to the preserved footage. *See Rodriguez*, 491 S.W.3d at 31 (concluding that evidence did not establish bad faith where surveillance video of a shooting failed to copy to a drive that was tagged into evidence, and the surveillance system had recorded over the video by the time the mistake was discovered); *Burdick*, 474 S.W.3d at 27 (concluding that appellant failed to establish bad faith in destruction of jail videos where the record established "that the videos were lost because they were taped over after seventeen days"); *Chandler v. State*, 278 S.W.3d 70, 76 (Tex. App.—Texarkana 2009, no pet.) (concluding that there was no evidence of bad faith in destruction of a jail security video where recording was maintained for sixty days and then deleted in accordance with routine); *Salazar v. State*, 185 S.W.3d 90, 92 (Tex. App.—San Antonio 2005, no pet.) (holding that the trial court did not abuse its discretion in denying a motion to suppress evidence where video of a prison riot was not preserved because policy of prison was to tape over in fourteen days). We overrule appellant's first issue.

### 2. Rule of Optional Completeness

By his second issue, appellant argues that the video was inadmissible under Texas

Rule of Evidence 107, otherwise known as the rule of optional completeness.[2] *See* TEX. R. EVID. 107. Specifically, appellant maintains that because only eighteen minutes of the video footage was preserved, the admission of the preserved footage violated the rule. However, appellant never objected on this ground in the trial court. To preserve error for appellate review of an evidentiary ruling, a party must obtain a ruling on a timely and specific objection, and his issue on appeal must comport with his trial objection. *See* TEX. R. APP. P. 33.1; *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). By failing to object on the basis of Rule 107 below, appellant has not preserved this issue for appeal. We overrule appellant's second and final issue.

### III. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
12th day of April, 2018.

---

[2] Rule 107 reads as follows:

> If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent. "Writing or recorded statement" includes a deposition.

TEX. R. EVID. 107.